IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| PINKTORIA ADKINS KEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20CV552 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security,[1] ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Pinktoria Adkins Key ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for DIB and SSI on October 25, 2016, alleging a disability onset date of May 13, 2016 in both applications. (Tr. at 12, 217-22, 226-27.)[2] Her

---

[1] Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as the Defendant in this suit. Neither the Court nor the parties need take any further action to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

applications were denied initially (Tr. at 53-78) and upon reconsideration (Tr. at 79-110). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 142-43.) On February 28, 2019, Plaintiff, along with her attorney, attended the subsequent video hearing, during which both Plaintiff and an impartial vocational expert testified. (Tr. at 12.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act (Tr. at 21), and, on April 21, 2020, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program (SSDI), established by Title II of the Act as amended, 42 U.S.C. § 401 et seq., provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program (SSI), established by Title XVI of the Act as amended, 42 U.S.C. § 1381 et seq., provides benefits to indigent disabled persons. The statutory definitions and the regulations promulgated by the Secretary for determining disability, see 20 C.F.R. pt. 404 (SSDI); 20 C.F.R. pt. 416 (SSI), governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1.

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

4

that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite the claimant's impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. (Tr. at 14.) At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> degenerative disc disease, degenerative joint disease, hypertension, and chronic obstructive [pulmonary] disease (COPD)[.]

(Tr. at 15.) The ALJ found at step three that neither of these impairments, individually or in combination, met or equaled a disability listing. (Tr. at 16-17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with the following, non-exertional limitations:

> frequent pushing and pulling with the right lower extremity, climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, and occasionally

5

>climb ladder[s], ropes, and scaffolds. She should avoid concentrated exposure
>to fumes, odors, dusts, gases, and poor ventilation.

(Tr. at 17.) At step four of the analysis, the ALJ found that Plaintiff's RFC did not preclude her past relevant work as a caregiver. (Tr. at 20.) The ALJ also made an alternative, step five, finding that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, Plaintiff could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 20-21.)

Plaintiff now contends that, in assessing her RFC, the ALJ failed to (1) "conduct a proper function-by-function analysis of [Plaintiff's] impairments" and "provide a logical bridge between the evidence and his conclusions regarding [Plaintiff's] RFC," and (2) evaluate Plaintiff's RFC "under the appropriate Regulations and Social Security Rulings." (Pl.'s Br. [Doc. #13] at 5.) After a thorough review of the record, the Court finds that neither of Plaintiff's contentions merit remand.

A. Function-By-Function Analysis

As Social Security Ruling ("SSR") 96-8p instructs, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including the functions listed in the regulations. Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "Only after such a function-by-function analysis may an ALJ express RFC in terms of the exertional levels of work." Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir.) (internal quotations and citations omitted). Further, the "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and

6

nonmedical evidence (e.g., daily activities, observations).'" SSR 96-8p, 1996 WL 374184, at *7. An ALJ must "both identify evidence that supports his conclusion and build an accurate and logical bridge from [that] evidence to his conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis omitted).

The Fourth Circuit has noted that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Mascio v. Colvin, 780 F.3d 632, 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki, 729 F.3d at 177). The court in Mascio concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. 780 F.3d at 637.

Here, Plaintiff contends that the ALJ failed to adequately explain why he concluded that Plaintiff could perform medium work with additional postural limitations. Specifically, Plaintiff asserts that "[i]nstead of providing a narrative discussion or analysis" as required by SSR 96-8p, "the ALJ jumped from a summary of the evidence that he found relevant to his conclusion that 'overall[, Plaintiff's] back and joint issues, hypertension, and COPD are accounted for with a limitation to medium work with postural and environmental limitations.'"

(Pl.'s Br. at 9 (quoting Tr. at 19).) Plaintiff further contends "that the ALJ's failure to include any logical explanation or function-by-function analysis prevents a reviewing court from conducting a meaningful review of the ALJ's conclusions." (Pl.'s Br. at 11.)

The crux of Plaintiff's challenge is her contention that the evidence supports a limitation to sedentary work, rather than the medium work identified by the ALJ. (Pl.'s Br. at 13.) Plaintiff notes that, if she "is limited to the performance of sedentary work activity Rule [201.10] of the Medical Vocational Guidelines would direct a finding of disabled in her favor." (Pl.'s Br. at 13 n.2) (citing 20 C.F.R. Part 404, Subpt. P, Appx. 2, Rule 201.10). In making these assertions, Plaintiff cites numerous records which she claims are consistent with her subjective statements and constitute unaddressed "contradictory evidence in the record" which "frustrate[s] meaningful review" under Mascio. However, as set out above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In the present case, the ALJ did not simply summarize the evidence and state a conclusion. Instead, the ALJ's narrative discussion of the evidence reflects the ALJ's analysis. That analysis reflects that in weighing the evidence and setting the RFC, the ALJ relied on Plaintiff's ongoing ability to work providing in home care to an individual with disabilities, her hobbies, her low level of care and conservative treatment, the lack of a "pattern of positively acute signs" in the treatment records, and the lack of any medical opinions supporting a greater

8

degree of restriction. (Tr. at 19.) As to Plaintiff's contention that she should have been restricted to sedentary work, the ALJ specifically addressed and considered the limitation to medium work in weighing the opinion evidence. As Plaintiff acknowledges, "[t]he ALJ assigned 'significant weight' to the opinions from the State Agency non-examining medical consultants, Dr. Sandhu and Dr. Linster." (Pl.'s Br. at 8 (citing Tr. at 19).) In the decision, the ALJ explained that, "Dr. Sandhu assessed [Plaintiff] at a light level, while Dr. Linster assessed her at a medium level." (Tr. at 19 (citing Tr. at 72-74, 87-89).) Ultimately, the ALJ explained that, after considering both consultants' opinions, he "went with limiting [Plaintiff] to a medium range of work as it is consistent with the totality of the record showing mainly mild findings and physical examinations." (Tr. at 19.) In fact, a comparison of the RFC assessed in this case with the findings of Dr. Linster reveals that the ALJ adopted Dr. Linster's opined limitations in their entirety, including not only the consultant's determination that Plaintiff could perform medium work, but also all of the postural and environmental restrictions included in Plaintiff's RFC assessment. (See Tr. at 17, 87-89.) In short, it is amply apparent how the ALJ determined Plaintiff's capacity to perform all of the functions included in her RFC assessment.[5]

---

[5] Notably, Plaintiff has not challenged the ALJ's treatment of Dr. Linster's opinion, and she offers no other basis for discounting the ALJ's adoption of the consultant's findings. Plaintiff cites at length to her hearing testimony, but the ALJ found that Plaintiff's subjective allegations were not supported by the record, as discussed in the next section. Plaintiff does refer to the pulmonary testing by the Consultative Examiner, as well as treatment notes reflecting occasional exacerbations of her COPD (Pl. Br. at 11-12.) However, the Consultative Examiner who conducted the pulmonary testing found only that Plaintiff's ability to perform work-like activities such as bending, stooping, lifting, walking, crawling, squatting, carrying, traveling, and "pushing and pulling heavy objects" was "mildly and intermittently more moderately impaired" due to the sum of her impairments. (Tr. at 567.) Dr. Lister likewise reviewed the pulmonary testing before concluding that Plaintiff remained capable of medium work. (Tr. at 87-89, 92.) The ALJ explained his evaluation of the evidence and reliance on Dr. Lister's opinion, and noted the "mainly mild findings and physical examinations" and lack of treating physician opinions supporting a greater degree of restriction. (Tr. at 19.) The ALJ thus

B. Regulatory Standards

In a related argument, Plaintiff contends that the ALJ applied the inappropriate regulatory framework when evaluating Plaintiff's RFC. Specifically, Plaintiff asserts that the ALJ conflated his analysis of Plaintiff's subjective statements with his RFC assessment, which necessarily involves not only a symptom evaluation, but an evaluation of the record as a whole, including medical evidence, opinion evidence, and Plaintiff's daily activities. She further argues that the ALJ erred by requiring objective evidence of Plaintiff's symptoms.

Plaintiff is correct that, under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2017 WL 5180304, at *10 (Oct. 25, 2017) ("SSR 16-3p"); see also 20 C.F.R. § 404.1529. Moreover, in Arakas v. Comm'r of Soc. Sec., 983 F.3d 83 (4th Cir. 2020), the Fourth Circuit recently clarified the procedure an ALJ must follow when assessing a claimant's statements:

> When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20 C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3.
>
> Second, after finding a medically determinable impairment, the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. At this step,

---

provided sufficient reasoning to explain his analysis, and substantial evidence in the record supports that determination.

objective evidence is *not* required to find the claimant disabled. SSR 16-3p, 2016 WL 1119029, at *4–5. SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Arakas, 983 F.3d at 95. Thus, the second part of the test requires the ALJ to consider all available evidence, including Plaintiff's statements about her pain, in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work." Craig, 76 F.3d at 595. This approach facilitates the ALJ's ultimate goal, which is to accurately determine the extent to which Plaintiff's pain or other symptoms limit her ability to perform basic work activities. Relevant evidence for this inquiry includes Plaintiff's "medical history, medical signs, and laboratory findings," Id., as well as the following factors set out in 20 C.F.R. § 416.929(c)(3) and 20 C.F.R. § 404.1529:

(i) [Plaintiff's] daily activities;
(ii) The location, duration, frequency, and intensity of [plaintiff's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or [has] taken to alleviate [her] pain or other symptoms;
(v) Treatment, other than medication, [Plaintiff] receive[s] or [has] received for relief of [her] pain or other symptoms;
(vi) Any measures [Plaintiff] use[s] or [has] used to relieve [her] pain or other symptoms (e.g., lying flat on [her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

In the present case, as instructed by the regulations, the ALJ considered the entire case record and explained his reasons for deviating from Plaintiff's statements regarding the impact of her symptoms on her ability to work. As recounted in the administrative decision, Plaintiff

11

Case 1:20-cv-00552-WO-JEP   Document 16   Filed 08/31/21   Page 11 of 14

"testified that her arthritis and swelling of joints are mainly what prevents her from working full time," and "[a]t times she can barely pick up anything with [her] hands." (Tr. at 17.) In particular, she testified that she could only lift 5 pounds. (Tr. at 17.) Plaintiff reported additional issues with sciatica, carpal tunnel syndrome, neuropathy, and emphysema. However, she still smoked 3 cigarettes per day. (Tr. at 17.) She "stated that she could walk for about 5 minutes before having breathing problems," and that the neuropathy from her feet to legs "sometimes caus[ed] sharp pains and swelling" and prevented her from being on her feet for 2 hours. (Tr. at 17.) Although Plaintiff stated that gabapentin "does not seem to help" her neuropathy, she further "contended that not taking gabapentin and standing for a long time make [her] neuropathy worse" and that "she could be on her feet for 3 minutes standing still." (Tr. at 17.)

In addition to the limited, objective medical evidence in this case, which generally characterizes Plaintiff's impairments and related limitations as persistent but mild (Tr. at 18-19), the ALJ relied on both the medical opinion evidence, as discussed above, and Plaintiff's activity level in finding her subjective complaints less-that-fully supported by the record. Specifically, he found as follows:

> [Plaintiff] testified that she works part time for 4 hours a day 5 days a week as in home care for a person in the house that she lives [in], so she does not have to leave home. During that time [Plaintiff] said that she makes sure he takes his medications, straightens up his room, and help[s] him with the shower. She stated that she crochets, cross-stitches, and plays games on her phone for fun. In terms of physical impairments, the level of care is low. She has not had any surgery, and no physician has endorsed "disabling" limitations. [Plaintiff] lacks insurance, which makes her level of care low, but the state agency's medical consultants evaluated her "as is" without the benefit of optimal treatment, and still did not find disabling limitations. . . . Overall, [Plaintiff's] back and joint issues, hypertension, and COPD are accounted for with a limitation to medium work with postural and environmental limitations.

12

(Tr. at 19.) In other words, the ALJ did not rely exclusively on a lack of corroborating objective evidence in discounting Plaintiff's subjective statements. Rather, he noted Plaintiff's ability to use her hands for a variety of tasks, her ability to perform part-time work as a home health aide, and the lack of any medical opinions noting disabling symptoms, and found that the overall evidence did not support the level of limitation Plaintiff alleged.

Also contrary to Plaintiff's assertions, the ALJ went beyond his findings relating to Plaintiff's subjective complaints when assessing her RFC. For example, as discussed in greater depth in subsection A of this Recommendation, the ALJ specifically relied on the findings of the State agency consultants in assessing Plaintiff's RFC. In doing so, the ALJ specifically noted that these findings were "consistent with the totality of the record showing mainly mild findings and physical examinations," which he recounted at length earlier in his decision. (Tr. at 18-19.) In making the purely procedural challenge now before the Court, Plaintiff does not cite any specific evidence omitted by the RFC. Instead, she relies on the Fourth Circuit's recent decision in Dowling v. Comm'r of Soc. Sec., 986 F.3d 377 (4th Cir. 2021), in which

> the ALJ relied on an incorrect regulatory framework when he assessed Appellant's RFC. He did not cite to 20 C.F.R. § 416.945, the section of the Code of Federal Regulations that is titled "Your residual functional capacity" and explains how ALJs should assess a claimant's RFC. Nor did he cite to SSR 96-8p, the 1996 Social Security Ruling that provides guidance on how to properly evaluate an RFC. Finally, the ALJ did not indicate that his RFC assessment was rooted in a function-by-function analysis of how Appellant's impairments impacted her ability to work.

Id. at 387. Here, as Defendant correctly notes, none of these factors are applicable. The ALJ cited all of the relevant regulations (see Tr. at 14), assessed the RFC under the appropriate standards as set forth in subsection A of this Recommendation, undertook the relevant

13

symptom evaluation using the two-step process provided in the regulations as set out above, and sufficiently explained his analysis. Plaintiff essentially asks the Court to reconsider and re-weigh the evidence presented. However, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. As noted above, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]" Hancock, 667 F.3d at 472 (quotation omitted). Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [Plaintiff] is disabled," but rather, "whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589. Here, the ALJ reviewed the evidence, explained his decision, explained the reasons for his determination, and that determination is supported by substantial evidence in the record. Plaintiff has not identified any errors that require remand, and Plaintiff's Motion for Judgment on the Pleadings should therefore be denied.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Summary Judgment [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 31st day of August, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge